IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARGUERITE L. SHAHID, | ) |
| | ) |
|     Plaintiff, | ) |
|   v. | ) Cause Number. 4:07CV1300 HEA |
| | ) |
| LITTON LOAN SERVICING, L.P., and | ) |
| AMC MORTGAGE SERVICES, INC., | ) |
| | ) |
|     Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss, [Doc. No.'s 8 and 9], for failure to state a cause of action. Plaintiff opposes the motions. For the reasons set forth below, the Motion is granted.

Plaintiff filed this action against Defendants for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, (FDCPA), the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601, *et seq.*, (RESPA) and the Missouri Merchandising Practices Act, § 407.010, *et seq.*, RSMo, (MMPA).

## Facts and Background

The Complaint alleges the following factual background: Plaintiff purchased a single family residence, located at 9733 Tullamoor Drive, St. Louis, Missouri, 63136 in November, 1991. This purchase was financed by a loan. Plaintiff refinanced the loan on June 9, 2003. Plaintiff executed a mortgage to secure the

loan. Defendant AMC serviced Plaintiff's loan until it transferred the loan to Defendant Litton, effective March 1, 2006. At the time AMC transferred the servicing of the loan, the balance was $61,816.95. The monthly payment on the loan was $596.00. Although the monthly payment had increased from $550.00 to $596.00 effective March 1, 2006 upon transfer of the loan from AMC to Litton, Litton never provided Plaintiff with a monthly statement nor notified Plaintiff of the dollar amount of any late charge for any late monthly payment made after March 1, 2006.

By letter dated June 27, 2006, Litton, through counsel, notified Plaintiff that the holder of the note executed by Plaintiff requested foreclosure and a sale of Plaintiff's residence was scheduled for July 20, 2006.

AMC notified Plaintiff by letter dated June 28, 2006 of its denial of her request to correct her account and informed Plaintiff that she owed $376.15 in late fees, without offering an explanation, notwithstanding the "suspense balance."

According to the Complaint, AMC held funds paid by Plaintiff in suspense for an extended period and disbursed the funds upon transfer of the loan to Litton on March 1, 2006, even though Plaintiff had instructed AMC to apply these funds to the loan.

On March 13, 2006, "Defendant"[1] provided Plaintiff with a Validation of Debt Notice which the Complaint alleges incorrectly stated that the current amount of the debt was $64,149.75. AMC transferred Plaintiff's loan to Litton with a "suspense" balance in the amount of $241.11 and paid that amount to Litton from a suspense account maintained by AMC. AMC also transferred to Litton the sum of $312.00, which represents an escrow balance. AMC's account statement also reflects as of March 1, 2006 a charge for repayment of an escrow advance in the amount of $819.39 and a late charge adjustment of $376.15.

Plaintiff disputed the late charge reflected in AMC's statement and on May 11, 2006, Plaintiff requested that Litton review and correct her account. In this correspondence, Plaintiff enclosed a copy of AMC's account statement showing payments credited to her account and the late charge she was disputing.

Litton acknowledged Plaintiff's correspondence in a letter dated May 12, 2006. Litton requested 60 business days to assist Plaintiff. Litton also requested that Plaintiff continue making monthly payments according to her loan agreement. Litton subsequently requested proof of payments Plaintiff had allegedly referenced in her May 11, 2006 letter as not being properly credited by AMC to her account.

_____

[1] The Complaint does not identify which defendant provided the Validation of Debt Notice.

On May 25, 2006, Defendant[2] referred Plaintiff's loan for foreclosure action due to non-payment, although Defendant had not notified Plaintiff as to any action it had taken with respect to Plaintiff's dispute of late charges and 60 business days had not yet expired.

On May 25, 2006, Plaintiff made payment to Litton Loan in the amount of $1,263.00 by Western Union Quick Collect Money Transfer. Litton refused to accept this payment. Litton did not return Plaintiff's telephone calls nor otherwise respond to Plaintiff's attempts to contact Lipton.

On May 30, 2006, Litton's attorneys demanded by letter payment in the amount of $4,847.54 by June 19, 2006 to reinstate Plaintiff's loan, including late charges in the amount of $446.67, an escrow advance of $507.39, a property inspection/maintenance fee of $11.00 and other charges. Litton's attorney sent another letter to Plaintiff also dated May 30, 2006 as to the amount of debt owed by Plaintiff, $61,787.61.

Plaintiff requested, by letter, that counsel review the account. A copy of Plaintiff's May 11, 2006 correspondence was included in this letter.

Plaintiff sent a letter to AMC on June 12, 2006 in which she continued to dispute late charges in the amount of $376.15 claimed by AMC. Plaintiff contends

_____

[2] Once again, Plaintiff does not identify which Defendant took this action.

AMC failed to apply payments to late charges in a prompt manner. She requested that her account be corrected.

Plaintiff sent a letter to Litton on June 12, 2006 and again requested that Litton review AMC's payment history. Plaintiff advised Litton that she would make a payment on her loan on June 16, 2006 in the amount she believed was the correct amount then due on her loan.

In a letter dated June 14, 2006, Litton acknowledged Plaintiff's June 12, 2006 letter and requested 60 business days to assist Plaintiff. Litton requested Plaintiff to continue making monthly payments according to her loan agreement. Litton responded to this letter on June 23, 2006. It indicated that the late charges of $376.15 were not paid but transferred to Litton by AMC and that AMC also transferred an escrow advance "balance" of $819.39 and a suspense account balance of $241.11. It further stated in this letter that the only payment it had received since transfer of the loan was $597.00 received on March 30, 2006, which was applied to the February 1, 2006 mortgage installment. It did not address Plaintiff's inquiry as to whether or how it applied $322.00 sent by AMC in March 2006 nor whether or how it would apply the funds it received from AMC from a suspense account balance, even though Litton had referred Plaintiff's account for foreclosure action on May 25, 2006 due to non-payment.

On June 16, 2006, Plaintiff made payment to Litton Loan in the amount of $1,862.00 by Western Union Quick Collect Money Transfer. Litton refused to accept this payment. It advised Plaintiff that the payment was insufficient to cover late charges.

On June 22, 2006, Plaintiff disputed the foreclosure action based on the on-going dispute of the late charges and the fact that she had sent payments which Litton refused to accept.

Litton provided Plaintiff with a "Reinstatement Quote" claiming $5,485.82. The projected sale date contained in the Reinstatement Quote was July 31, 2006, which Plaintiff claims was contrary to the date indicated by Litton's counsel in the Notice of Trustee's Sale.

Litton claimed that Plaintiff owed 2 monthly installments payments of $596.00 each and 3 monthly installments of $638.28 each, as of July 5, 2006. Litton further claimed attorneys fees not yet billed in the amount of $650.00 and $763.92, and an escrow advance balance of $507.39.

Plaintiff contends that the claim that Plaintiff owed 3 monthly payments of $638.28 is improper because under the terms of the note executed by Plaintiff changes in the interest rate and monthly payment can be made only within 6 months after March 1, 2006, the effective date of the previous change of Plaintiff's monthly

payment.

Plaintiff believes that Litton foreclosed on the deed of trust and sold

Plaintiff's residence on July 20 or July 31, 2006.

The Complaint claims that Defendants violated the FDCPA, RESPA and the

Missouri Merchandising Practices Act, § 407.010, *et seq.*, RSMo.

Defendants now move to dismiss Plaintiff's Complaint for failure to state a

cause of action.

### Motion to Dismiss Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint.

The Supreme Court has recently determined that *Conley v. Gibson's*,  355 U.S. 41,

45-46 (1957), "no set of facts" language "has earned its retirement." *Bell Atlantic*

*Corp. v. Twombly,* __ U.S.__, __, 127 S.Ct. 1955, 1969 (May 21, 2007).  Noting

the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief,'"

the Court held that a viable complaint must include "enough facts to state a claim to

relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1964-65, 1974.  In

other words, "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Id.* at 1965.  The Court explained that this new standard "simply

calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of [the claim or element]." *Id.*  On the other hand, the Court noted that "of

course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "[P]rior rulings and considered views of leading commentators" can assist in assessing the plausibility of the plaintiffs' allegations. *Id.* at 1966. This standard of review has recently been utilized by the Eighth Circuit Court of Appeals. The Court accepts "as true all factual allegations in the complaint, giving no effect to conclusory allegations of law. The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). (Citations omitted).

When considering a motion to dismiss, courts are still required to accept the complaint's factual allegations as true. *Twombly*, 127 S.Ct. at 1965. All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997). Furthermore, the Court, in

construing the Complaint, may also consider the attachments thereto. Any written instrument attached to a complaint is considered a part of the complaint, and may be considered in ruling on a motion to dismiss. Fed.R.Civ.P. 10(c); *Quinn v. Ocwen Federal Bank FSB,* 470 F.3d 1240, 1244 (8th Cir. 2006). ("[W]ritten instruments attached to the complaint become part of it for all purposes. *See Fed.R.Civ.P. 10(c).* 'For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint.' *Abels,* 259 F.3d at 921.")

## Discussion

### The FDCPA Claim

The first claim for relief in Plaintiff's Complaint seeks recovery under the Fair Debt Collection Practices Act. Defendants move to dismiss Count I on the ground that this claim is barred by the applicable statute of limitations. Section 1692k(d) provides the limitations period:

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States District Court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

As Defendants correctly argue, the alleged violations of which Plaintiff complains must have occurred on or after July 19, 2006, *i.e.*, within one year previous to the filing of the instant action. The Complaint alleges several actions

taken by Defendants, however, none of the alleged actions fall within one year of the filing of this action.  In response, Plaintiff argues that the July 20, 2006 foreclosure action on the deed of trust constitutes a violation of the FDCPA.  Plaintiff's reliance on the foreclosure is misplaced.  Foreclosing on a deed of trust does not fall within the perimeters of an act to collect a debt such that the FDCPA would apply.

Courts have consistently found that mortgage companies and their trustees that engaged in foreclosure are not "debt collectors" under 15 U.S.C. § 1692a(6) because they are not seeking to collect money; instead, they are seeking to enforce a secured interest (the Deed of Trust), to gain property.  *See Hulse v. Ocwen Federal Bank, FSB,* 195 F.Supp.2d 1188, 1204 (D.Or.2002) (finding "foreclosing on a trust deed is distinct from the collection of the obligation to pay money .... Payment of funds is not the object of the foreclosure action.  Rather, the lender is foreclosing its interest in the property." ); *see Heinemann v. Jim Walter Homes, Inc.,* 47 F.Supp.2d 716 (D.W.Va.1998) (finding that because "the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust, these activities do not fall within the terms of the FDCPA" ), *aff'd ,* 173 F.3d 850 (4 Cir.1999); *Oldroyd v. Associates Consumer Discount Co.,* 863 F.Supp. 237 (E.D.Pa.1994) (mortgage company is not a "debt collector" under FDCPA).  *Miller*

*v. Northwest Trustee Services, Inc.,* WL 1711131, *2 -3 (E.D. Wash. 2005). See also, *Brown v. Morris* 243 Fed.Appx. 31, 36, 2007 WL 1879392, *4 (5th Cir. 2007).([A] non-judicial foreclosure is not *per se* FDCPA debt collection."); *Acosta v. Campbell,* No. 6:04CV761 ORL28DAB, 2006 WL 14-208, at *16 (M.D.Fla., January 18, 2006) citing *Beadle v. Haughey,* No. Civ.04-272-SM, 2005 WL 300060 at *3 (D.N.H.Feb.9, 2005) ("it seems very well established that foreclosing on a mortgage does not constitute debt-collecting activity under the FDCPA"; *Rosado v. Taylor*, 324 F.Supp.2d 917, 924 (N.D.Ind.2004) (citing 15 U.S.C. § 1692a(6)(security enforcement activities (by financial institution servicing a mortgage debt) fall outside the scope of the FDCPA because they are not debt collection practices); *Braun v. Stawiarski*, WL 2793150, *3 -4 (D.Colo.,2006); *Barbanti v. Quality Loan Service Corp.* WL 26775, *2 -3 (E.D.Wash.,2007)("[T]he Court determines the enforcement of a security interest through a nonjudicial forfeiture does not constitute the collection of a debt for purposes of the FDCPA."); *Overton v. Foutty & Foutty, LLP* WL 2413026, *3 -7 (S.D. Ind. 2007).

The last act taken by either Defendant in an effort to collect the debt alleged in the Complaint was on July 5, 2006 by Defendant Litton. Because Plaintiff has not alleged any actions taken by Defendants seeking to enforce a debt within the applicable one year limitations period, Plaintiff has failed to state a claim upon

which relief can be granted.  Defendants' Motion to Dismiss the FDCPA claim will

be granted.

## The RESPA Claim

Plaintiff's second claim contained in the Complaint alleges that Defendants

violated RESPA by failing to make appropriate corrections to her account.  Section

2605(e)(2) provides:

Duty of loan servicer to respond to borrower inquiries

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and
Sundays) after the receipt from any borrower of any qualified written
request under paragraph (1) and, if applicable, before taking any action
with respect to the inquiry of the borrower, the servicer shall–

**(A)** make appropriate corrections in the account of the borrower,
including the crediting of any late charges or penalties, and transmit to
the borrower a written notification of such correction (which shall
include the name and telephone number of a representative of the
servicer who can provide assistance to the borrower);

**(B)** after conducting an investigation, provide the borrower with a
written explanation or clarification that includes--

**(I)** to the extent applicable, a statement of the reasons for which the
servicer believes the account of the borrower is correct as determined
by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

**(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

**(I)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C.(e)(2) § 2605.

Plaintiff's Complaint details the correspondence between Plaintiff and

Defendants. Furthermore, Plaintiff has attached the correspondence to the

Complaint. Contained within these letters are Defendants' responses to Plaintiff's

written inquiries. Both Defendants responded to Plaintiff's inquiries consistent with

the requirements outlined in Section 2605. Although neither Defendant "corrected"

Plaintiff's account as she requested, Defendants conducted research and explained

to Plaintiff why the requested corrections would not be made. Defendants advised

Plaintiff in their letters of the telephone number to call for questions and which of

their departments to contact. Plaintiff's pleadings and attachments establish that

Defendants have indeed complied with RESPA, and as such, Plaintiff cannot state a

cause of action against them under RESPA.

## The  MMPA Claim

Finally, Plaintiff's Complaint seeks to state a claim under the Missouri

Merchandising Practices Act.  Initially, it should be noted that this Court has

discretion to continue to exercise supplemental jurisdiction over solely state  claims

once all federal claims have been dismissed or to dismiss them.  "It is within the

district court's discretion to exercise supplemental jurisdiction after dismissal of the

federal claim. *Kan. Pub. Employees Ret. Sys.,* 77 F.3d at 1067-68."  *Quinn,* 470

F.3d at 1249.  Because Plaintiff fails to state a cause of action under the MMPA, the

Court will exercise its supplemental jurisdiction and completely determine the

motion before the Court.

The MMPA prohibits the use of "deception, fraud, false pretense, false

promise, misrepresentation, unfair practice or the concealment, suppression, or

omission of any material fact in connection with the sale or advertisement of any

merchandise in trade or commerce.  R.S.Mo. § 407.020.  Although Plaintiff argues

that Defendants' actions fall within the ambit of a "sale of a service," *i.e.,*  the sale

of their services in servicing of her loan, Plaintiff offers no support for this

argument.  While the Court commends Plaintiff on her valliant effort to salvage her

claim, her argument that included within the loan transaction, Plaintiff "purchased"

the servicing of the loan from Defendants is unpersuasive.  Clearly, the sale of service, if any, was from Defendants to the lender.  Nothing contained within the Complaint gives rise to even an inference, much less a reasonable inference, that Defendants sold anything to Plaintiff.  Plaintiff fails to assert facts that affirmatively and plausibly suggest that she has the right she claims.  *Stalley*, 509 F.3d at 521.  The Motions with respect to Plaintiff's third claim for relief will be granted.

## Conclusion

Sadly, Plaintiff's Complaint fails to state a cause of action against both Defendants for the reasons set forth above. Plaintiff has clearly failed to satisfy the pleading requirements set forth in *Twombly*, and has therefore failed to state a claim for which relief may be granted.  The Motions to Dismiss are therefore well taken.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, [Doc. No.'s 8 and 9] are **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that this matter is **DISMISSED**.

Dated this 25th day of January, 2008.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE